UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DISHAWN O. CURRY,                                    CIVIL NO. 05-2781 (PJS/JSM)

    Plaintiff,

v.                                                   REPORT AND RECOMMENDATION

FEDERAL BUREAU OF PRISONS,
W.I. LEBLANC, JR, warden,
FOOD SUPERVISOR FALLON,
FOOD SUPERVISOR NEWMAN,
in their individual and official capacities,

    Defendants.

The above matter came before the undersigned United States Magistrate Judge upon defendants' Motion to Dismiss, Alternatively for Summary Judgment [Docket No. 27].

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.1(c). For the reasons discussed below, **IT IS RECOMMENDED** that:

    1.    Defendants' Motion to Dismiss, Alternatively for Summary Judgment [Docket No. 27] be **GRANTED**; and

    2.    Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

**I.**    **FACTUAL BACKGROUND**

Plaintiff Dishawn O. Curry ("Curry") is currently a prisoner at the United States Medical Center for Federal Prisoners in Springfield Missouri. See Complaint, ¶ 3. At all times relevant to the present case, Curry was an inmate at Federal Medical Center

("FMC-Rochester") located in Rochester, Minnesota. Curry brought the present suit against the Federal Bureau of Prisons ("BOP"), Warden W.I. LeBlanc, Jr. ("LeBlanc"), Food Supervisor LaDonna Fallon ("Fallon"), and Food Supervisor Thomas Newman ("Newman"). Id., ¶¶ 4-7. Defendants LeBlanc, Fallon, and Newman are employees of FMC-Rochester. Id. Curry has characterized his case as a "Civil Action authorized by BIVENS VS SIX UNKNOWN NARCOTICS AGENTS, 403 U.S. 388 (1971) to redress the deprivation of rights secured by the Constitution of the United States." Id., ¶ 1. This action is being brought against defendants in both their individual and official capacities. Id., ¶ 8.

Curry alleges that on October 6, 2003, he was ordered by Fallon to appear for work duty in food services. Id., ¶ 10. Curry claimed he told Fallon that he was without proper safety attire, consisting of safety boots. Id. Despite his request, Fallon allegedly told Curry to appear for work without the necessary safety attire. Id. Curry characterized Fallon's actions as a "complete disregard" for his safety and the safety regulations. Id.[1]

On October 9, 2003, Curry allegedly approached Newman and asked that he be provided with proper safety attire. Id., ¶ 11. According to Curry, Newman advised him that his "lack of proper safety attire was not his concern and that Plaintiff was being given a direct order to work and to worry about his attire at a later time." Id.[2]

---

[1] Fallon has no recollection of any conversation with Curry on this day. See LaDonna Fallon Declaration, ¶ 3.

[2] By-and-large, Newman did not dispute these facts. While he did not specifically recall the shoes Curry was wearing on October 9, 2003, Newman stated that the documentation indicated that he had observed that Curry was not wearing his boots to work, that he asked Curry where his boots were and Curry told him that he did not have

Subsequently, during his October 9, 2003 work shift in the dish room, Curry allegedly slipped on a wet floor.  Id., ¶ 12.  As a result, Curry claims that he suffered a severely fractured ankle, an injury to his knee necessitating surgery, back pain, and neck pain.  Id.

Curry asserts that the actions of defendants Fallon and Newman, which allegedly resulted in Curry's injuries, "showed a reckless disregard and deliberate indifference to Plaintiff's safety & well being in violation of the Eighth Amendment and Due Process Clauses of the U.S. Constitution."  Id., ¶ 13.  As to defendants BOP and LeBlanc, Curry claims that:

> His injuries are traceable to the policies and procedures of the Federal Bureau of Prisons and it's [sic] inadequacies in it's [sic] hiring and training of employees.  Plaintiff also contends that his injuries are a direct result of Defendant LeBlancs [sic] failure to adequately supervise his employees.  All of these actions violate the Plaintiff's rights under the Due Process Clauses of the U.S. Constitution.

Id., ¶ 14.

As a result of defendants' conduct, Curry sought damages in four forms: (1) a declaration that the acts and omissions described in the Complaint violated Curry's rights under the Constitution and the law of the United States; (2) compensatory damages in the amount of $3.5 million dollars against each defendant; (3) $2 million dollars in punitive damages against each defendant; and (4) costs incurred as a result of this suit and all other damages that the Court found to be just and equitable.  Id., ¶¶ 18-23.

---

time to get them.  See Declaration of Thomas Newman, ¶ 3.  Newman also stated that "under normal conditions I would have sent the plaintiff out to get his work boots, [but as he] was scheduled to work in the dish room washing dishes, cups and silverware, and as he was needed in that area, I advised him to go to the dish room."  Id., ¶ 4.

In lieu of an answer, and relying on a number of different theories, defendants brought a motion to dismiss Curry's claims under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), and in the alternative, a motion for summary judgment pursuant to Rule 56. First, defendants sought dismissal of any negligence claims or claims under the Federal Torts Claims Act ("FTCA") on the grounds that Curry's exclusive remedies for injuries suffered while performing his tasks are provided for under the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126. See Federal Defendants' Memorandum in Support of Motion to Dismiss Alternatively for Summary Judgment ("Defs.' Mem.") at p. 8. Second, defendants claimed that any intentional tort alleged by Curry was barred by the expiration of the two-year statute of limitations under Minnesota law. Id., at pp. 9-10. Third, defendants sought dismissal of the Complaint against the defendants in their individual capacities based on qualified immunity. Id. at pp. 10-14. Fourth, as to LeBlanc, defendants asked for dismissal of Curry's constitutional claims against him, because a Bivens claim cannot be maintained under a respondeat superior theory. Id. at pp. 14-15. Fifth, defendants asserted that Curry cannot maintain claims for monetary compensation against them in their official capacities. Id. at pp. 16-17. Finally, defendants argued that Curry's constitutional claims fail to state a claim as a matter of law on the grounds that the facts he has asserted in his Complaint only amount to negligence, which cannot be the basis of a constitutional tort, and in the alternative, summary judgment is appropriate as the record contains no facts to support a constitutional violation. Id. at pp. 18-19.

Before addressing the merits of defendants' motion, the Court finds that it is not necessary to analyze defendants' arguments with respect to the FTCA, IACA, statute of

limitations or tort claims, as a plain reading of the Complaint and Curry's response to defendants' motion indicates that Curry is a <u>only</u> asserting a <u>Bivens</u> action based on constitutional violations under the Eighth Amendment and "Due Process Clauses." <u>See</u> Complaint, ¶¶ 1, 13, 14.  As such, this Court's analysis is limited to the constitutional claims made by Curry.

## II.  STANDARD OF REVIEW

### A.  <u>Motion to Dismiss</u>

In assessing motions to dismiss, "[a]ll facts alleged in the complaint are taken as true and construed in the light most favorable to the plaintiff." <u>Kottschade v. City of Rochester</u>, 319 F.3d 1038, 1040 (8th Cir. 2003).  "[I]n treating the factual allegations of a complaint as true, the court does not, however, blindly accept the legal conclusions drawn by the pleader from the facts." <u>Helleloid v. Indep. Sch. Dist. Number 361</u>, 149 F.Supp.2d 863, 867 (D. Minn. 2001) (citations omitted); <u>see</u> <u>also</u> <u>Wiles v. Capitol Indem. Corp.</u>, 280 F.3d 868, 870 (8th Cir. 2002).  In addition, "the court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences. <u>Helleloid</u>, 149 F.Supp.2d at 867 (citations omitted); <u>see</u> <u>also</u> <u>Wiles</u>, 280 F.3d at 870.

### B.  <u>Summary Judgment</u>

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celeotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>see</u> <u>also</u> <u>Unigroup, Inc. v. O'Rourke Storage & Transfer Co.</u>, 980 F.2d 1217, 1219 (8th Cir. 1999).  "'Only disputes over facts that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

### III. DISCUSSION

#### A. Constitutional Claims Against Defendants LeBlanc, Fallon, and Newman in their Official Capacities

To the extent Curry is seeking redress for separate violations of the Eighth and the Due Process clauses[3] against the individual federal defendants LeBlanc, Fallon,

---

3   As discussed later, Curry did not specify whether he was alleging a substantive or procedural due process violation, or which due process clause he was alleging had

and Newman in their official capacities, his claims must be dismissed as sovereign immunity bars Curry's Bivens claims against the individual defendants in their official capacities. "Federal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity. The court may hear the case, however, if the plaintiff shows that the government has unequivocally waived that immunity." Barnes v. United States, 448 F.3d 1065, 1066 (8th Cir. 2006) (citation omitted); see also Searcy v. Donelson, 204 F.3d 797, 798 (8th Cir. 2000) (finding that Bivens claims brought against federal defendants in their official capacity are barred because of sovereign immunity) (citing Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998)). Here, the United States has not waived sovereign immunity, nor can a Bivens action amount to a waiver of sovereign immunity for actions against the United States, as it only creates a cause of action against federal officials in their individual capacities. See Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982) (citing Bivens, 403 U.S. at 410).

As such, the defendants' motion to dismiss Curry's Complaint with regards to the constitutional claims brought against federal employees LeBlanc, Fallon, and Newman in their official capacities should be granted, and the claims should be dismissed for a lack of subject matter jurisdiction.

### C. Claim Against the Federal Bureau of Prisons

Curry has included the BOP as defendant in his Complaint, alleging his injuries are "traceable to the policies and procedures of the Federal Bureau of Prisons and it's inadequacies in its hiring and training of employees," which he claims amounted to a violation of his rights under the due process clause of the Constitution. See Complaint,

---

been violated. See Section II,E.2, infra. However, this Court has concluded that he was asserting a substantive due process claim under the Fifth Amendment. Id.

¶ 14. This Court finds that a Bivens claim cannot be maintained against an agency of the United States under the doctrine of sovereign immunity. See Buford, F.3d at 1203 ("It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity.") (citing Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982)). This holding also extends to Bivens suits brought against the BOP. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("'the prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP . . . with respect to the alleged constitutional deprivation, his only remedy lies against the individual."). As such, defendants' motion to dismiss Curry's Complaint with regards to the constitutional claim brought against the BOP should be granted, and the claim against it be dismissed with prejudice.

### D.     Bivens Claim Against LeBlanc in his Individual Capacity

As stated previously, Curry contends that his injuries are a direct result of defendant LeBlanc's failure to adequately supervise his employees, thereby violating his rights under "the Due Process Clauses of the U.S. Constitution." Id., ¶ 14. Since Curry is alleging that LeBlanc, an employee of the Federal BOP, violated his constitutional rights in his individual capacity, he is asserting Bivens claims against LeBlanc. See Buford, 160 F.3d at 1203 n. 6 ("A Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights.") (citation omitted).

However, a Bivens action cannot be premised on respondeat superior liability or a failure to supervise; under Bivens, defendants can only be liable for their personal acts. See Buford, 160 F.3d at 1203 n. 7 (citing Estate of Rosenberg v. Crandell, 56

F.3d 35, 37 (8th Cir. 1995)); see also Rizzo v. Goode, 423 U.S. 362, 377 (1976) (rejecting the argument that a supervising public official has an constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates and that supervising official does not violate a victim's constitutional rights unless he or she has played "an affirmative part" in the alleged misconduct of the subordinates); Brown v. Grabowski, 922 F.2d 1097, 1120 (3rd Cir.), cert. denied, 501 U.S. 1218 (1991) (concluding that mere failure to train and supervise, absent proof of direct participation in the subordinates' conduct, does not form the basis for a constitutional claim) (citation omitted); Chinchello v. Fenton, 805 F.2d 126, 133 (3rd Cir. 1986) (dismissing Bivens claim against the Director of Bureau of Prisons and finding that "while supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative duty to train, supervise or discipline so as to prevent such conduct."); Bellecourt v. United States, 784 F. Supp. 623, 633 (D. Minn. 1992) ("In a Bivens action, a federal official cannot be held vicariously liable for the acts of his subordinates under the doctrine of respondeat superior, unless he was personally involved in or participated in the unconstitutional acts.  Unless plaintiff pleads an "affirmative link" between the supervisor's "personal participation, his exercise of control or direction, or his failure to supervise," dismissal is appropriate.") (internal citations omitted).

   As such, the defendants' motion to dismiss Curry's Complaint with regards to the claim brought against LeBlanc in his individual capacity should be granted, and the claim against him be dismissed with prejudice.

### E. Constitutional Claims Against Defendants Fallon and Newman in their Individual Capacities

Defendants argue that this Court should dismiss Curry's Complaint against defendants Fallon and Newman because they are entitled to qualified immunity in their individual capacities. In this regard, defendants argue that they did not engage in any conduct that violated Curry's clearly established constitutional rights.

"'Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995); Malley v. Briggs, 475 U.S. 335 (1986)); see also Saucier v. Katz, 533 U.S. 194, 205 (2001) (stating that "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense"). "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)). "The obvious function of the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties." Edwards v. Baer, 863 F.2d 606, 607 (8th Cir. 1988).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal

reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). "The lynchpin of qualified immunity is the public official's *objective* reasonableness." Bagby, 98 F.3d at 1098 (emphasis in original).

The applicability of the qualified immunity doctrine is a question of law and, when qualified immunity is raised as a defense, courts analyze the application of qualified immunity by first addressing "whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Sanders v. City of Minneapolis, Minnesota, 474 F.3d 523, 526 (8th Cir. 2007) (citing Saucier, 533 U.S. at 201). Once that element is met, then the Court must determine whether the officials knew or should have known that the right was clearly established, and whether the officials knew or should have known that their conduct violated that right. See Tyler v. Barton, 901 F.2d 689, 691 (8th Cir. 1990) (applying these factors to prison officials).

Thus, in order to overcome the claim of qualified immunity, Curry must first show that his constitutional rights were clearly established. See Treats v. Morgan, 308 F.3d 868, 874 (8th Cir. 2002). "A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of what type of action would violate that right." Id. (citing Hope v. Pelzer, 536 U.S. 730, 739-40, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)). If no constitutional right is implicated, even if the allegations are established, then no further inquiry is required. See Saucier, 533 U.S. at 201.

**1.    Eighth Amendment Violation**

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  The prohibition against "cruel and unusual punishments" is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).  Conditions of a prisoner's confinement, including prison work assignments, can give rise to Eighth Amendment violations.  See Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993) (citation omitted).  "In the work assignment context, prison officials are deliberately indifferent when they 'knowingly . . . compel convicts to perform physical labor . . . which is beyond their strength, or which constitutes a danger to their . . . health, or which is unduly painful.'"  Id. (quoting Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977)).  In order to succeed on an Eighth Amendment claim, the prisoner must "first prove that the conditions challenged were "objectively, 'sufficiently serious,'" and then prove that the prison official "acted with a "'sufficiently culpable state of mind.'"  Stephens v. Johnson, 83 F.3d 198, 200 (8th Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994); see also Choate, 7 F.3d at 1373 ("To prevail on an Eighth Amendment claim, an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind.") (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Applying these precepts to the case at hand, this Court must first address the objective portion of the Eighth Amendment inquiry and determine whether the risk of harm to Curry was sufficiently serious.  See Farmer, 511 U.S. at 834 ("For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.") (citation omitted); see also Ambrose v. Young, 474 F.3d 1070, 1075 (8th Cir. 2007) ("To prevail on his Eighth Amendment claim, Ambrose must prove both an objective element, which asks whether the [risk of harm] was sufficiently serious, . . .") (modification in original) (quoting Choate, 7 F.3d at 1373).

Accepting as true Curry's allegations that he slipped and fell on October 9, 2006, as a result of being ordered to work in the kitchen without safety boots, this Court finds these conditions did not constitute a substantial risk of serious harm that could support an Eighth Amendment violation.  While standing water can be a potentially hazardous condition, "slippery floors constitute a daily risk faced by members of the public at large."  Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004); see also Snyder v. Blankenship, 473 F. Supp. 1208, 1212-13 (W.D. Va. 1979) (personal injury resulting from a failure to repair a leaking dishwasher did not violate the Eighth Amendment as a matter of law because slip-and-fall injury is not comparable to a "prison-related" injury), aff'd, 618 F.2d 104 (4th Cir. 1980), cert. denied 446 U.S. 942 (1980).

In Reynolds, the Tenth Circuit concluded that a slippery condition arising from standing water in a prison shower was not a condition posing a substantial risk of serious harm, as required under the Eighth Amendment, even where the inmate was on

crutches and had warned prison employees that he was at a heightened risk of falling. 370 F.3d at 1032. Similarly, in <u>Bell v. Ward</u>, (No. 03-2033), 88 Fed.Appx. 125, 2004 WL 260284 (7th Cir. Feb. 06, 2004), the Seventh Circuit found that "although wet floors do present a possibility that inmates might slip, Bell's allegations do not suggest a substantial risk of serious harm that reflects the deliberate indifference required to impose liability under the Eighth Amendment." <u>Id.</u> at *1. In <u>Bell</u>, an inmate who had slipped in standing water, which was the result of inmates putting out fires they had started using milk cartons, alleged that prison officials knew of the wet floor and "deliberately" refused to remedy the situation by enforcing the prohibition on burning milk cartons, by ensuring that the floor was dry, or at the very least by posting warnings about the hazards of water on the floor. <u>Id.</u>

Likewise, other courts have consistently held that wet or slippery floors do not pose an objectively excessive risk to prisoners. See e.g., <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993) ("[W]e do not find that shackling a dangerous inmate in a shower creates a sufficiently unsafe condition. Even if the floors of the shower are slippery and LeMaire might fall while showering, 'slippery prison floors. . . do not state even an arguable claim for cruel and unusual punishment.'") (quoting <u>Jackson v. Arizona</u>, 885 F.3d 639 (9th Cir. 1989)); <u>Gilman v. Woodford</u>, No. CIV S-05-0337 FCD GGH P, 2006 WL 1049739 at *4 (E.D.Cal. April 20, 2006) ("[T]he court finds that defendants are entitled to qualified immunity. A slippery floor caused by a leaky roof is a condition similar to a slippery kitchen floor caused by a leaky dishwasher or a greasy staircase. A reasonable prison official could have believed that the failure to repair the leaky roof did not violate the Eighth Amendment."); <u>Eley v. Kearney</u>, No. Civ. 02-362-

SLR, 2005 WL 1026718 at *5 (D. Del. April 25, 2005) ("Plaintiff has not established that the alleged deprivation, an accumulation of water at the top of a flight of stairs, constitutes an "objectively, sufficiently serious" deprivation. The court concludes that, to the extent an accumulated slippery substance can be classified as a deprivation, it is better classified as inadvertent or negligent rather than obdurate or wanton."); Sylla v. City of New York, No. 04-cv-5692 (ILG), 2005 WL 3336460 at *3 (E.D.N.Y. Dec. 08, 2005) (finding that an instruction by prison officials to inmates to use a bathroom that is wet, or even flooded, "does not inherently constitute an excessively serious risk to substantiate an Eighth Amendment violation. . . ."); Robinson v. Cuyler, 511 F. Supp. 161, 163 (E.D. Pa. 1981) ("A slippery kitchen floor does not inflict 'cruel and unusual punishments'").  Accordingly, this Court concludes that forcing an inmate to work a kitchen detail that may involve wet floors is not a condition which poses a substantial risk of serious harm and triggers Eighth Amendment protections.

This Court acknowledges that in addition to alleging that defendants exposed Curry to wet floors in the kitchen, Curry also claimed that Newman ignored prison regulations by not permitting him to get his safety boots prior to working in the kitchen on the day he slipped on a wet floor.  However, in a case where prison officials failed to provide prisoners with safety equipment (including steel tipped boots, safety glasses, and hard hats) at work, despite the prison's knowledge of the risk of injury due to previous safety problems, the Eighth Circuit found that these conditions did not constitute a constitutional violation under the Eighth Amendment.  See Stephens v. Johnson, 83 F.3d 198, 201 (8th Cir. 1998).  Moreover, the Eighth Circuit has held that there is no federal constitutional liberty interest in having prison officials follow prison

regulations.  See Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (citing Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996)).  Instead, any liberty interest must be viewed in terms of the "nature of the prisoner's confinement," and not in terms of the procedures by which the prison officials use to determine how an inmate should be confined.  Id.  Stated differently, the Eighth Amendment does not constitutionalize safety regulations, nor does it mandate that the regulations be followed.  See French v. Owens, 777 F.2d 1250, 1257 (7th Cir. 1985); see also Brown v. Richmond County Correctional Institution, No. CV 105-118, 2006 WL 1431488 at *2 (S.D. Ga. May 22, 2006) ("'Prison regulations . . . were never intended to confer rights on inmates or serve as a basis for constitutional claims.  Instead, [prison] regulations . . . were designed to provide guidance to prison officials in the administration of prisons.") (quoting Blakenship v. Kittle, No. 03 C 3573, 2003 WL 22048712, at *2 (N.D. Ill. Aug.6, 2003)).

For all these reasons, as to Curry's Eighth Amendment claim against Newman, this Court finds that Newman is entitled to qualified immunity, and recommends dismissal of this claim against Newman with prejudice.[4]

As for defendant Fallon, Curry only alleges that on October 6, 2003, he was ordered by Fallon to appear for work duty in food services without safety boots in

---

[4] Even if Curry were able to show that denial of safety boots to a prisoner exposed to wet floors did amount to an Eighth Amendment violation, this Court would still find that Newman was entitled to qualified immunity, as Curry presented no evidence to establish that Curry knew or should have known that this right was clearly established, and that he knew or should have known that his conduct violated that right.  See Tyler, 901 F.2d at 691.  Rather, the evidence before this Court is that inmate food service workers wear safety boots shoes while working in food services to help prevent injuries to their toes from dropped items and not to prevent skidding on floors.  See Declaration of Thomas Newman, ¶ 4.  Therefore, a reasonable prison official could have believed that the failure to ensure that an inmate was wearing steel-tipped shoes prior to working on a possibly slippery surface did not violate the Eighth Amendment.

complete disregard for his safety and the safety regulations. Complaint, ¶ 10. Curry's claim fails for two reasons: First, he has not alleged any physical or mental injury arising out of working on October 6, 2003. Second, as just discussed, the conditions alleged do not implicate the Eighth Amendment and there is no federal constitutional liberty interest in having prison officials follow prison regulations. Curry has failed to state claim for relief under the Eighth Amendment against Fallon for merely not following prison safety regulations, and recommends dismissal of this claim against Newman with prejudice.

### 2. Due Process Clause Claim

Curry alleges that the actions of defendants Fallon and Newman, which allegedly resulted in Curry's injuries, "showed a reckless disregard and deliberate indifference to Plaintiff's safety & well being in violation of the Eighth Amendment and Due Process Clauses of the U.S. Constitution." Complaint, ¶ 13 (emphasis added). The Complaint does not explicitly state whether Curry is asserting a substantive due process claim or a procedural due process claim under the due process clause. However, Curry's claims under the Eighth Amendment and the due process clause are both based on his assertions that defendants showed "a reckless disregard and deliberate indifference to Plaintiff's safety", as opposed to denying him process prior to depriving him of a constitutional property or liberty interest. Thus, the Court construes the allegations in paragraph 13 of the Complaint as asserting a violation of his substantive due process rights.

In addition, while Curry does not state whether he is asserting his due process claim under the Fifth or Fourteenth Amendment, this Court will assume that he is

asserting a Fifth Amendment claim, considering that he brought his suit against federal actors. See Morin v. Caire, 77 F.3d 116, 120 (5th Cir.1996) (citing Richard v. Hinson, 70 F.3d 415, 416 (5th Cir.1995)).  The Fifth Amendment provides in relevant part, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V.

Because Curry's substantive due process claim is basically the same as his Eighth Amendment claim, this Court finds that Curry's substantive due process claims should be dismissed. "If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  In applying this principal, courts have concluded that an Eighth Amendment claim that is coterminous with a substantive due process claim, supercedes the due process claim. See e.g., Brown v. Chandler, No. 04-7024, 111 Fed.Appx. 972, 2004 WL 2244492 at *3 (10th Cir. Oct. 06, 2004) ("[T]o the extent Brown is alleging that defendants have violated his substantive due process rights, the claim is "essentially coextensive with Eighth Amendment prohibitions against cruel and unusual punishment, and . . . the Eighth Amendment serves as the primary source of protection for convicted prisoners.") (quoting Lunsford v. Bennett, 17 F.3d 1574, 1583 (7th Cir. 1994)); Williams v. Benjamin, 77 F.3d 756, 768 (4th Cir. 1996) ("As to his claim of a substantive due process violation, it is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater substantive

protection 'than does the Cruel and Unusual Punishments Clause.' Accordingly, Williams' substantive Due Process claim adds nothing to his Eighth Amendment claim.") (quoting Whitley, 475 U.S. at 327); Graham v. Poole, 476 F.Supp.2d 257, 261 (W.D.N.Y. 2007) ("[C]ourts have held that '[t]here is no sustainable substantive due process claim in the alternative to a claim governed under the Eighth Amendment. . . .'" (quoting Davis v. Pennsylvania Dep't of Corrections, No. 05-1558, 2006 WL 2927631, at *10 (W.D. Pa. Oct.12, 2006)); Powell v. Henry, No. 05-70435, 2007 WL 551587 at *1 (E.D. Mich. 2007) (finding that the plaintiff's substantive due process claim failed because his claim was controlled by the Eighth Amendment); Mele v. Connecticut, No. 3:06CV1741 (SRU), 2007 WL 445488 at *2 (D. Conn. Feb. 09, 2007) (citations omitted) ("Because the court has determined that the complaint does not state a claim for unconstitutional conditions of confinement under the Eighth Amendment, Mele's substantive due process claim fails as well."); Madison v. Mazzuca, No. 02 Civ. 10299, 2004 WL 3037730 at *11 (S.D.N.Y. Dec. 30, 2004) ("Because Madison's deliberate indifference claim is covered by the Eighth Amendment, the substantive due process claims are duplicative. . . . Therefore, the substantive due process claims are dismissed as to all Defendants").  Given that Curry's substantive due process claim is duplicative of his Eighth Amendment claim, his substantive due process claims as to Fallon and Newman should be dismissed.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1.	Defendants' Motion to Dismiss, Alternatively for Summary Judgment [Docket No. 27] be **GRANTED**; and

2.	Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

Dated:	June 13, 2007

	*s/ Janie S. Mayeron*
	JANIE S. MAYERON
	United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 2, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.